# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MITCHELL KITCHEN, | : | |
| Plaintiff, | : | Case No. 3:09cv00193 |
| vs. | : | District Judge Walter Herbert Rice<br>Magistrate Judge Sharon L. Ovington |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | :<br><br>: | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I.   Introduction

Plaintiff Mitchell Kitchen brings this case challenging the Social Security Administration's denial of his applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB). This Court has jurisdiction to review the administrative denial of Plaintiff's applications. *See* 42 U.S.C. §§405(g), 1383(c)(3). The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), the administrative record, and the record as a whole.

During the administrative proceedings, Plaintiff asserted that he is eligible to receive SSI and DIB because he under a "disability" within the meaning of the Social Security Act. In the present case, he seeks reversal of the administrative non-disability

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

determination and denial of his applications or, at a minimum, a remand of this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the administrative decision.

## II.     Background

### A.     Procedural History

Plaintiff filed DIB and SSI applications on February 26, 2006 asserting that he was under a "disability" mainly due to an affective disorder. (Tr. 78). He asserted that his disability prevented him from working beginning on October 18, 2004.

Following initial administrative denials of his applications, Plaintiff received a hearing before Administrative Law Judge (ALJ) Daniel R. Shell. (Tr. 311-31). ALJ Shell later issued the written decision concluding that Plaintiff was not under a disability and, therefore, not eligible to receive DIB or SSI. (Tr. 16-27). ALJ Shell's decision is at issue in the present case.

### B.     Plaintiff's Background and Testimony

Plaintiff was between age forty-three and forty-seven from his claimed disability onset date through the date of the ALJ's decision. He was consequently considered a "younger person" for purposes of resolving his DIB and SSI claims. (Tr. 25). He has a high school education. His past jobs include work as a packer, a steel processor, and a warehouse supervisor. *See* Doc. #8 at 3 (and citations therein).

Plaintiff suffers from headaches due to injuries he suffered in January 2003 when someone hit him in the head with a baseball bat. (Tr. 317-18; *see* Tr. 133-39). Yet his challenges to the ALJ's decision focus mainly on his claimed mental disabilities: anxiety and depression. *See* Doc. #8 at 9-17.

Plaintiff testified during the ALJ's hearing that he was continuing to receive treatment in a dual diagnosis program for alcoholism and mental health issues. (Tr. 320). He takes three prescription medications: Zoloft, Xanax, and Seroquel. (Tr. 321). The

only side effect he feels is from the Seroquel; it causes dizziness and makes it difficult for him to wake up in the morning. *Id.*

Plaintiff explained that he continues to be sad most of the time and hardly has any appetite. (Tr. 322). He is always nervous. This makes him feel like he gets an electric shock when the phone rings or someone knocks at the door. (Tr. 322). He has difficulty going to the grocery store or to any store because of problems with panic attacks. (Tr. 323). He tries to go to the store when there are the least number of people there, and he goes in and out as quickly as possible. He also has minor panic attacks dealing with the cashier at a cash register. (Tr. 324).

On one occasion, when Plaintiff tried to apply for a job, he was shaking and hyperventilating so badly that the job interview ended early. (Tr. 324-25). Plaintiff testified that he cannot concentrate to read very long, and he doesn't remember what he reads. (Tr. 326-27).

C. **Medical Evidence**

Dr. Padamadan performed an internal medicine evaluation of Plaintiff in August 2005 at the request of the Ohio Bureau of Disability Determinations (Ohio BDD). (Tr. 140). He diagnosed Plaintiff with "Overt anxiety state." (Tr. 142). Dr. Padamadan noted, however, "The extent of [Plaintiff's] psychiatric status was not evaluated with this examination." (Tr. 143).

The administrative record in this case indicates that Plaintiff was evaluated by psychologist Dr. Bonds, who provided a report to the Social Security Administration on August 8, 2005. (Tr. 38). The administrative record does not contain a copy of Dr. Bonds' report. (Doc. #8 at 3).

In September 2005 psychologist Dr. Katz reviewed Plaintiff's medical records at the Ohio BDD's request. Dr. Katz summarized Dr. Bonds' report as follows:

> During consultative examination [by Dr. Bonds], claimant's mood was depressed and affect was broad and appropriate. He expressed feelings

3

of sadness and hopelessness. He has a history of suicidal ideation with no
current plan. Problems with sleep and concentration were reported.
Claimant was alert and oriented. Daily activities include helping his mother
around the house. He mows the lawn and is able to cook a little. He is able
to do his own laundry and operate a car to get him where he needs to go.
He enjoys walking in the park.

(Tr. 150). Dr. Katz opined, "There is no substantial loss in ability to complete tasks which are simple and routine in nature and do not require interaction with the general public." *Id*.

On February 8, 2006 Plaintiff began treatment at the Miami County Mental Health Center. Plaintiff reported that he had last used alcohol on December 24, 2005. (Tr. 188). He described his pattern of drinking as three times weekly, a twelve pack of beer each time – "enough to get drunk." (Tr. 188). A clinical summary dated February 8, 2006 states in part:

> He was referred for services by the Miami County Recovery Council after their assessment found clear dual diagnosis issues including depression, panic attacks, anxiety, as well as his alcohol dependency issues.... He reported in addition to high levels of anxiety, depression, and panic attacks. He reports panic attacks at least three times weekly.... The depression has been there for over eleven years and has gotten worse since the head trauma. He feels hopeless, blue and depressed daily, crying spells at least three times weekly, racing thoughts, sleep problems, difficulty in getting himself motivated especially in the mornings. He struggles with fears and anxiety for years – history of suicide/depression – his aunt, sister, and a cousin all committed suicide. Mother has a history of severe depression.... He feels the alcohol was a self medicator as he did not feel the anxiety when intoxicated. Admits his alcohol use is out of control, has had numerous blackouts, alcohol use affects all of his major life areas....

(Tr. 194). He was diagnosed with major depressive disorder, panic disorder with agoraphobia, alcohol dependency, and general anxiety disorder. (Tr. 195).

Psychiatrist Dr. Nims treated Plaintiff from February 2006 to October 2007. Dr. Nims' treatment notes document Plaintiff's mental health difficulties during this period. (Tr. 200-209). In his note on October 30, 2007, Dr. Nims indicated that Plaintiff had

4

been sober for some time and was taking steps to improve himself, such as retaking his driver's test. (Tr. 209). Dr. Nims further noted, however, that Plaintiff had attempted to interview for a job at a Bob Evans restaurant, but he became so anxious and tremulous that he had to leave. *Id*. Dr. Nims wrote, "Hopefully he can cope with his anxiety at some point so that he can find some employment." (Tr. 200).

Before this, in February 2007, clinical psychologist Dr. Schultz examined and evaluated Plaintiff for the Ohio BDD. (Tr. 166-72). Dr. Schulz observed that Plaintiff's mood was anxious and depressed and his affect was congruent. "He exhibited autonomic motor activity consistent with anxiety features. He exhibited saddened facial musculature. Mood was noted as depressed and anxious...." (Tr. 169).

Dr. Schulz described Plaintiff's history of alcohol abuse as follows:

> In 1984 he was treated for 21 days on an inpatient basis at BAS ... for alcohol abuse. In 1987 he was treated for 21 days on an inpatient basis at Detmer-Jacobson Center for alcohol abuse. In 1990 he was treated for 6 months on an outpatient basis at MCRC ... for alcohol abuse.
>
> * * *
>
> [Plaintiff] reports having used alcohol since he was 13 years old. He started drinking whiskey with his father. He usually drank beer after his early alcohol use. At his highest rate of use (from 1980 to 1983, 1999 to 2003) he drank alcohol almost every day, and consumed an average of 12 twelve ounces beers each day. The last time he drank any alcohol was December of 2006....

(Tr. 167). Dr. Schulz diagnosed Plaintiff with major depression, alcohol abuse, and anxiety disorder NOS (not otherwise specified). (Tr. 171). His then current GAF[2] was 50 indicating "serious symptoms ... or any serious impairment in social, occupational, or

---

[2] Health care professionals use the GAF (Global Assessment of Functioning) scale to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed.Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at 32-34.

school functioning (e.g., no friends, unable to keep a job)...." Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision at p. 34.

Dr. Schulz assessed Plaintiff's mental work abilities in the four areas considered by the Social Security Administration. (Tr. 172). Dr. Schulz concluded: (1) Plaintiff's mental ability to relate to others, including supervisors and coworkers, was minimally to mildly impaired; (2) Plaintiff's ability to understand, remember, and follow instructions was mildly to moderately impaired; (3) his ability to maintain attention, concentration, and to perform simple repetitive tasks with adequate pace and perseverance was minimally impaired; and (4) his mental ability to withstand the stress and pressures associated with day-to-day work activity was moderately to severely impaired. (Tr. 172).

In September 2007 Tina Supinger, a licensed social worker and a community support specialist with the Miami County Mental Health Center, wrote a letter to the Social Security Administration. (Tr. 180-81). Ms. Supinger reported that before Plaintiff began treatment at the Miami County Mental Health Center, he had been homeless since October 2004. (Tr. 180). At the time of Ms. Supinger's letter, Plaintiff was living in the St. Joseph boarding house. *Id*. Ms. Supinger reported that Plaintiff had a hard time getting out with the others from the boarding house due to anxiety and panic attacks. Plaintiff felt that others were talking about him and his odd behavior. *Id*. He tried to help out at the boarding house but he would forget what he is doing. For example, he would walk into another room while he is cooking and end up burning what he was cooking. He needed reminders to take care of personal care. *Id*. Ms. Supinger observed that when Plaintiff interacted with others, "he sits rocking and rubbing his palms back and forth on his thighs. He has a problem focusing for longer than 20 minutes and needs to get up to walk around." (Tr. 181).

Plaintiff continued to receive treatment at Miami County Mental Health Center with counselor Sandra J. Wells, ME.D, a case manager Tom Jenkins, and Dr. Nims (until October 31, 2007) and later with Dr. Atiq. (Tr. 181, 251-94).

In a July 2008 report, Dr. Atiq and Ms. Wells noted that Mr. Kitchen had poor or no ability to deal with the public, deal with work stresses, or maintain attention/concentration. (Tr. 248). The report further states, "Mr. Kitchen's mental health impairments greatly inhibit his ability to interact with others. The severe head injury incurred in 2003 has impaired his mental focus, memory and ability to concentrate." (Tr. 249). Dr. Atiq and Ms. Wells noted that Plaintiff had only a "fair" ability to perform the most of the mental work activities. (Tr. 248-50).

In their answers to certain interrogatories, Dr. Atiq and Ms. Wells concluded that Plaintiff would be totally disabled based on depression and anxiety disorders alone. (Tr. 147). They explained that Plaintiff has a family history on his mother's side of severe depression, anxiety, and suicide. His dependence on alcohol developed as a result of his trying to alleviate his mental health symptoms by drinking. *Id*.

## III. Administrative Review

### A. "Disability" Defined

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

7

### B.     ALJ Shell's Decision

ALJ Shell resolved Plaintiff's disability claim by using the five-Step sequential evaluation procedure required by Social Security Regulations. *See* Tr. 18-27; *see also* 20 C.F.R. §404.1520(a)(4), 416.920(a)(4).[3] ALJ Shell concluded at Step 2 of the sequential evaluation that Plaintiff's severe impairments included "substance use (alcohol) disorder, depression, anxiety and seizure disorder." (Tr. 19).

The ALJ concluded at Step 3 that until March 2008 Plaintiff's impairments, including the substance abuse disorder met section 12.09 of the Listing of Impairments,[4] "with reference to sections 12.04 (affective disorders) and 12.06 (anxiety-related disorders)...." (Tr. 20). Yet ALJ Shell further concluded:

> From the alleged disability onset date through the present, absent claimant's substance abuse, he did not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in ... [the Listings].

(Tr. 22).

The ALJ assessed Plaintiff's Residual Functional Capacity (Step 4) absent his substance abuse as follows:

> [H]e has the residual functional capacity to perform medium work[5] ... with the following functional limitations: no unprotected heights; no ladders, ropes or scaffolding; only low stress jobs; no direct dealing with the general public; no over the shoulder supervision; no production quotas and no commercial driving.

(Tr. 22) (footnote added). The ALJ also found that from Plaintiff's disability onset date through the present, absent his substance abuse, Plaintiff was unable to perform his past

---

[3] The remaining citations to the Regulations will identify the pertinent DIB Regulation with full knowledge of the corresponding SSI Regulation.

[4] The Listings appear in the Regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1.

[5] Under the Regulations, "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...." 20 C.F.R. §404.1567(c).

8

relevant work. (Tr. 25).

At Step 5 the ALJ concluded that absent his substance abuse, Plaintiff could perform a significant number of jobs available in the national economy. (Tr. 26).

The ALJ's findings throughout his sequential evaluation led him to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI. (Tr. 18-27).

## IV. <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: " whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r. of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r. of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r. of Social Security*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r. of Social Security*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

9

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Comm'r. of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.     DISCUSSION

### A.     Medical Source Opinions

**1.**

Plaintiff contends that the ALJ erred in his rejection of the opinions provided by his treating psychiatrist Dr. Atiq and by instead crediting the opinions of one-time examiner, Dr. Schultz, and the opinion of state agency reviewer, Dr. Katz.

The Commissioner argues that the ALJ did not err when evaluating Dr. Atiq's opinion because his opinion (1) was "neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence" (Tr. 23); (2) seemed to be "based on uncritical acceptance of [Plaintiff's] subjective complaints and allegations," *id*., and (3) the opinion of total disability was the responsibility of the ALJ, not the treating physician. The Commissioner also points to certain evidence of record as a reasonable basis for rejecting Dr. Atiq's opinions. (Doc. #12 at 11-12). And the Commissioner maintains that the ALJ properly relied, in part, on Dr. Katz's opinion. *Id*. at 12-13.

**2.**

ALJs must adhere to the principle that greater deference is generally given to the opinions of treating medical sources than to those of a non-treating medical source. *Rogers*, 486 F.3d at 242; *see* 20 C.F.R. §404.1527(d)(2). This is so, the Regulations explain, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a DIB claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examiners, such as

10

consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2); *see also Rogers*, 486 F.3d at 242. In light of this, an ALJ must grant controlling weight to a treating source's opinion when it is both well supported by medically acceptable data and not inconsistent with other substantial evidence of record. *Rogers*, 486 F.3d at 242; *see Wilson*, 378 F.3d at 544, 20 C.F.R. § 404.1527(d)(2).

If either of these attributes is missing, the treating source's opinion is not due deferential controlling weight, *id.*, but the ALJ's analysis does not end there:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable [data] . . . or is inconsistent with other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected . . .

Social Security Ruling 96-2p, 1996 WL 374188, at *4. The Regulations require the ALJ to continue evaluating the treating source's opinions, considering "a host of other factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id.*

"[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician [or psychologist] is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242.

The Commissioner views non-treating medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p, 1996 WL 374180, at *2. Yet the Regulations do not permit an ALJ to automatically accept (or reject) the opinions of a non-treating medical source. *See id.*, at *2-*3. The Regulations explain, "In deciding whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). To fulfill this promise, the Regulations require ALJs to

evaluate non-treating medical source opinions under the factors set forth in § 404.1527(d) including, at a minium, the factors of supportability, consistency, and specialization. *See* 20 C.F.R. § 404.1572(f); *see also* Ruling 96-6p at *2-*3.

**3.**

The ALJ correctly described the legal criteria applicable to the evaluation of treating medical source opinions and in doing so did not err as a matter of law. *See* Tr. 23; *see also* 20 C.F.R. §404.1527(d)(2). The ALJ then explained his rejection of the opinions provided by Plaintiff's treating psychiatrist Dr. Atiq as follows:

> When analyzed under the guidelines, Dr. Atiq's conclusions cannot be given controlling, or even deferential weight. Such conclusions are neither well supported by medically acceptable clinical and laboratory diagnostic techniques nor consistent with other substantial evidence in the case record. The only plausible explanation for Dr. Atiq's pessimistic assessment of claimant's functional capabilities is that such an assessment was based on an uncritical acceptance of claimant's subjective complaints and allegations. For Social Security purposes, an impairment must be established, not only by a claimant's statement of symptoms, but by medical evidence consisting of signs, symptoms, and laboratory findings. (20 CFR 404.1508). The claimant undoubtedly has some functional limitations associated with his mental impairments, but the weight of the evidence of record does not establish that such impairments would limit claimant to being totally disabled as indicated by Dr. Atiq. Dr. Atiq's opinion is not consistent with the opinion of Dr. Schultz or Dr. Katz (Exhibits 3F and 4 F).

(Tr. 23).

There are several problems with the ALJ's evaluation. First, the United States Court of Appeals for the Sixth Circuit has rejected the need for objective medical evidence to support a claimed mental impairment as follows:

> [A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices ... in order to obtain objective clinical manifestations of mental illness....

12

> [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)(other citation omitted). Consequently, the ALJ erred to the extent he did not consider Dr. Artiz's diagnoses and observations as valid evidence of mental disability. *See id.*

Second, substantial evidence does not support the ALJ's conclusion that the "only plausible explanation for Dr. Atiq's pessimistic assessment of claimant's functional capabilities is that such an assessment was based on an uncritical acceptance of claimant's subjective complaints and allegations." (Tr. 23). A review of Dr. Atiq's opinions in July 2008 reveals that Dr. Atiq, along with counselor Wells, noted that Plaintiff had poor or no ability to deal with the public, deal with work stresses, or maintain attention/concentration and a fair mental ability to perform in other work areas. (Tr. 248). These opinions were supported by the following explanation: "Mr. Kitchen's mental health impairments greatly inhibit his ability to interact with others. The severe head injury incurred in 2003 has impaired his mental focus, memory and ability to concentrate." (Tr. 249). In addition, Dr. Atiq and Ms. Wells explained, "The combination of mental health concerns and head trauma have impaired Mr. Kitchen's abilities to remember, organize his thoughts, and comprehend what he reads." (Tr. 249). And they noted, "Mr. Kitchen remains socially isolated with minimal contacts. He often shows poor judgment choosing people to trust and interact with." (Tr. 250). In this manner, Dr. Atiq did not simply credit Plaintiff's statements without critically evaluating them, as the ALJ believed; Dr. Atiq considered pertinent signs and symptoms associated with Plaintiff's mental health problems and provided some explanation in support of his

13

opinions. Similarly, Dr. Atiq also opined that Plaintiff would be totally disabled based on his depression and anxiety disorders alone. Dr. Atiq based this conclusion on Plaintiff's family history (on his mother's side) of severe depression, anxiety, and suicide as well as on the fact that Plaintiff's dependence on alcohol developed as a result of his trying to alleviate his mental health symptoms by drinking. (Tr. 247). In this manner – contrary to the ALJ's statement that there was only one plausible explanation for Dr. Atiq's opinion – Dr. Atiq provided explanations grounded on the signs, symptoms, and observations he made in support of his opinions.

Third, the ALJ rejected Dr. Atiq's opinions as inconsistent with those of Dr. Schultz and Dr. Katz. But the ALJ never evaluated the opinions of either of these non-treating medical sources under any of the factors required by the Regulations. The ALJ provided no rationale as to why the opinions of these non-treating source's deserved greater weight than the opinions of Plaintiff's treating psychiatrist Dr. Atiq. This constituted a failure to apply the correct legal criteria because the Regulations and the Commissioner's Rulings required the ALJ to weigh the opinions of one-time examining physicians and record-reviewing physicians under the regulatory factors, including supportability, consistency, and specialization. *See* 20 C.F.R. §404.1527(d), (f); *see also* Social Security Ruling 96-6p, 1996 WL 374180. The Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §404.1527(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see* also 20 C.F.R. §404.1527(f)(ii) (factors apply to opinions of state agency consultants); 20 C.F.R. §404.1527(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

Similarly, the pertinent Ruling instructs:

> The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical

evidence, qualifications, and explanations for the opinions, than are required of treating sources.

For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

Social Security Ruling 96-6p at Policy Interpretation (emphasis added).

In addition, the ALJ did not consider the fact that Dr. Katz's review occurred in September 2005, and therefore, her opinions were not based on a complete record. This is significant because Plaintiff did not begin his treatment at the Miami County Mental Health Center until February 2006 – well after Dr. Katz's review. Dr. Atiq, moreover, did not provide his opinions until July 2008. By then Plaintiff had participated in mental health treatment for over two years, as shown by his treatment records from Miami County Mental Health Center, which Dr. Katz could not have considered in September 2005. Dr. Katz likewise could not have reviewed the July 2008 opinions of Dr. Atiq and Ms. Wells. Given these circumstances, the ALJ erred by rejecting treating psychiatrist Dr. Atiq's opinions based in part on Dr. Katz's not-fully-informed opinions. *See Blakley v. Commissioner of Social Security*, 581 F.3d 399, 409 (6th Cir. 2009) ("'we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete case record.'").

Accordingly, for the above reasons, Plaintiff's contentions regarding the ALJ's evaluation of the medical source opinions and the medical record are well taken.

### B. The ALJ's Substance Abuse Findings

Social Security Regulations provide that if the claimant is under a disability and there is medical evidence of his or her alcoholism, then "we must determine whether [the claimant's] ... alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §404.1535(a). The Regulations explain, "The key factor we will examine in determining whether ... alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using ... alcohol." *Id.* §404.1535(b)(1).

ALJ Shell considered Plaintiff's alcohol abuse and concluded, "The evidence of record fails to establish the existence of a mental impairment that is 'disabling' absent the effect of substance abuse. Consequently, it is found claimant's substance abuse was a contributing factor material to a finding of 'disability.'" (Tr. 21). The ALJ explained:

> It is apparent the severity of the claimant's psychological symptoms was impacted by his substance abuse. This conclusion is supported by the consultative and evaluating psychological opinions that were given during a time when claimant was not under the influence of alcohol. These opinions indicate that Plaintiff was capable of performing simple, repetitive tasks without contact with the general public [Tr. 150]. Conversely, in February, 2006, claimant was reportedly drinking at least 12 beers three times per week. [Tr. 186]. At that time he reported crying spells, racing thoughts and sleep problems. [Tr. 180-98]. There is a definite causal connection between the severity of the claimant's anxiety and depressive symptoms and his substance abuse.

(Tr. 20). As the ALJ's explanation shows, he relied on the opinions of Dr. Katz (Tr. 150) to support his conclusion that when Plaintiff was drinking alcohol, he could perform simple, repetitive task without contact with the general public. This finding, however, was not based on the assessment of Dr. Katz's opinions required by the Regulations, and Dr. Katz did not have Plaintiff's mental health treatment records or treating psychiatrist Dr. Atiq's opinion before her when she evaluated the record. The ALJ's explanation is likewise not supported by substantial evidence because the February 2006 record he cites

16

(Tr. 186) reveals that Plaintiff's pattern of drinking was twelve beers per day three times per week, but the record also reveals the he had last drank beer in December 2005. In addition, treating psychiatrist Dr. Atiq opined that Plaintiff would be disabled based on his "depression and anxiety alone." (Tr. 247). Although the ALJ has the duty to determine whether Plaintiff is under a "disability" within the meaning of the Social Security Act, *see* 20 C.F.R. §404.15427(e), the ALJ should have evaluated this aspect of Dr. Atiq's opinion when assessing the impact, if any, Plaintiff's substance abuse had on his mental impairments. Again, "[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques." *Blankenship*, 874 F.2d at 1121.

Accordingly, Plaintiff's challenge to the ALJ's substance abuse findings are well taken.

### C. Remand is Warranted

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not

strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176.

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand the ALJ should be directed to (1) re-evaluate the medical source opinions of record under the legal criteria applicable under the Commissioner's Regulation and Rulings and as mandated by case law; (2) re-consider Plaintiff's history of alcohol abuse as required by 20 C.F.R. §404.1535; and (3) review Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and thus eligible for DIB and/or SSI.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Mitchell Kitchen was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


March 9, 2010          s/Sharon L. Ovington
                                                         Sharon L. Ovington
                                         United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).